UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| C.A.R.R., Petitioner, -v- GENALO, et al., Respondents, | 26 Civ. 4284 (DEH) **OPINION AND ORDER** |

DALE E. HO, United States District Judge:

Petitioner C.A.R.R., proceeding by pseudonym,[1] brings this Petition for Writ of Habeas Corpus, challenging his two-plus year detention and requesting a constitutionally adequate bond hearing or release. *See* Petition for Writ of Habeas Corpus ("Pet."), ECF No. 1. On May 26, 2026, this Court granted the Petition in part, ordering Respondents "to provide an individualized bond hearing to Petitioner at which Respondents bear the burden of proving by clear and convincing evidence that his continued detention is justified," or to release C.A.R.R. from detention. Notice of Conference at 1, ECF No. 11. On May 29, 2026, this Court further ordered that the Immigration Judge ("IJ") "must meaningfully consider alternatives to detention when assessing both danger to the community and flight risk, as well as C.A.R.R.'s ability to pay if setting a monetary bond." ECF No. 16.

Before the Court is Petitioner's Motion to Enforce the Orders of this Court that set the parameters of the necessary bond hearing before an IJ. *See* Mot. to Enforce ("Mot."), ECF No. 22. Petitioner argues that the IJ erred by: (1) failing to place the correct burden on Respondents to

---

[1] The Motion to proceed by pseudonym is GRANTED. *See* ECF No. 3.

demonstrate dangerousness; and (2) failing to consider alternatives to detention. *Id.* at 9, 19. On review, the Court concludes that the IJ failed to hold Respondents to their burden to demonstrate by clear and convincing evidence that C.A.R.R. poses a danger to the community. Nor did the IJ consider alternatives to detention in denying bond. Accordingly, the Motion to Enforce is **GRANTED**, and Respondents are **ORDERED** to release Petitioner on terms to be determined by the Parties in accordance with this Order.

**BACKGROUND**

Petitioner C.A.R.R. is a 29-year-old man from El Salvador. Pet. ¶ 1. He has lived in the United States for approximately 14 years (since 2012), when he entered the country as an unaccompanied minor at the age of 15. *Id.* ¶ 15. Customs and Border Protection ("CBP") agents encountered C.A.R.R. near Douglas, Arizona on March 27, 2012, and, because he was an unaccompanied minor, placed him in the custody of the Office of Refugee Resettlement ("ORR"). *Id.* C.A.R.R. was later released to a family relative in New York. *Id.*

Prior to his apprehension by ICE two years ago, C.A.R.R. lived with the mother of his child and their now seven-year-old U.S. citizen son. *Id.* ¶ 17. C.A.R.R. worked as a landscaper to support his family both in the United States and in El Salvador. *Id.* C.A.R.R.'s son has been identified as having an educational disability, specifically a speech and language impairment. *Id.* ¶ 18.

In the years since moving to the United States, C.A.R.R. has been arrested four times. *Id.* ¶ 19. C.A.R.R.'s first two arrests took place on November 26, 2021, and August 17, 2022, respectively, but all charges in relation to those arrests were dismissed and sealed. *Id.* ¶¶ 20-21. He has a single criminal conviction dated July 19, 2023, for criminal possession of a controlled substance in the fifth degree under N.Y. Pen. L. § 220.06(5), for which he was sentenced to five years of probation. *Id.* ¶¶ 19, 22. C.A.R.R. was last arrested on December 12, 2023, and charged

with robbery in the first degree under N.Y. Pen. L. §160.15(3), robbery in the second degree under N.Y. Pen. L. §160.10(1), criminal possession of a weapon in the fourth degree under N.Y. Pen. L. § 265.01(1), menacing in the second degree under N.Y. Pen. L. § 120.14 (1), and two counts of petit larceny under N.Y. Pen. L. § 155.25. *Id.* ¶ 23. All charges in relation to that arrest were dismissed and sealed on January 31, 2024. *Id.*

On March 14, 2024, ICE agents detained C.A.R.R. outside of his residence in Inwood, New York. *Id.* ¶ 25. He has since been held at the Orange County Correctional Facility, in Goshen, New York. *Id.* ¶ 26. His immigration proceedings are ongoing, but at least several months remain before there is a foreseeable resolution to his pending challenges to his removal. *Id.* ¶¶ 27-43.

Roughly a year following his detention, C.A.R.R. requested a bond hearing before an IJ. *Id.* ¶ 44. On April 17, 2025, an IJ found that C.A.R.R. was subject to mandatory detention under § 1226(c) and denied bond. *Id.* ¶¶ 46-48. The BIA affirmed the ruling of the IJ without an opinion on August 11, 2025. *Id.* ¶ 49.

On May 21, 2026, C.A.R.R. filed a Petition for Writ of Habeas Corpus in this Court, challenging his detention as unreasonably prolonged in violation of the due process clause of the Fifth Amendment. *See Black v. Decker*, 103 F.4th 133, 143 (2d Cir. 2024) ("The Supreme Court long ago held that the Fifth Amendment entitles noncitizens to due process in removal proceedings.").[2] On May 22, 2026, this Court order Respondents to show cause for why the Petition should not be granted in light of the length of Petitioner's detention and the absence of the possibility of removal in the reasonably foreseeable future. ECF No. 7. That same day, Respondents filed a letter indicating that, despite their disagreement with the caselaw of the Second

[2] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

Circuit on prolonged detention, *see Black*, 103 F.4th at 143, the facts of this case compelled an order for a bond hearing under that precedent. ECF No. 10, at 2-3.

On May 26, 2026, the Court ordered Respondents to "provide an individualized bond hearing to Petitioner at which Respondents bear the burden of proving by clear and convincing evidence that his continued detention is justified." ECF No. 11. The Court later clarified on May 29, 2026, that the IJ "must meaningfully consider alternatives to detention when assessing both danger to the community and flight risk, as well as C.A.R.R.'s ability to pay if setting a monetary bond." ECF No. 16.

A bond hearing was scheduled for June 8, 2026, before IJ Charles Conroy at the Varick Street Immigration Court. *See* Mot. Ex. A, Transcript of Bond Hearing Transcript ("Bond Tr."), ECF No. 22-2. In advance of the hearing, ICE submitted two packets of evidence. Mot. at 2. The first packet contained records from C.A.R.R.'s immigration court proceedings, this Court's habeas orders, and police reports, complaints, and criminal court documents for C.A.R.R.'s four arrests discussed above. *See generally* Mot. Ex. B, ICE Bond Hearing Evidence Packet 1, Parts 1–4 ("ICE Evidence Packet 1"), ECF Nos. 22-3–22-6. Both the Record of Deportable/Inadmissible Alien ("Form I-213") and the Nassau County Police Department records alleged that C.A.R.R. is a member of the MS-13 gang. *See* ICE Evidence Packet 1 at 13, 153. ICE's second packet of evidence contained various documents, including U.S. government reports and news articles regarding the MS-13 gang generally, none of which referred to C.A.R.R. specifically. *See generally* Mot. Ex. C, ICE Bond Hearing Evidence Packet 2 ("ICE Evidence Packet 2"), ECF No. 22-7. ICE did not provide any evidence on the efficacy (or lack thereof) of geo-monitoring devices such as ankle monitors, home confinement, or other alternatives to detention. *See* Mot. at 3.

Petitioner submitted substantial evidence of his own. This evidence included

- declarations and letters of support from seven family and community members, Mot. Ex. D, C.A.R.R. Evidence Parts 1-3 ("C.A.R.R. Evidence") at 1–22, ECF Nos. 22-8–22-10;
- C.A.R.R.'s asylum application and accompanying declaration, in which he states under penalty of perjury that he has never been an MS-13 member, *id.* at 23–41;
- two sections of New York's Criminal Procedure Law explaining the legal effect of dismissal of criminal cases, *id.* at 42–45;
- the certificates of disposition for C.A.R.R.'s three dismissed criminal cases, *id.* at 46–49;
- a January 2023 report from LatinoJustice PRLDEF documenting the unreliability of Nassau County Police Department reports regarding gang affiliation, *id.* at 50–81;
- documentation of C.A.R.R.'s participation in alcohol and substance abuse programming and the Orange County Jail's trustee work program, *id.* at 82–84;
- a letter from a social worker at The Legal Aid Society explaining that she has contacted an outpatient treatment program that C.A.R.R. will attend upon release, *id.* at 91–93;
- documentation regarding C.A.R.R.'s seven-year-old U.S. citizen son and his individualized education plan, *id.* at 94–138;
- a non-exhaustive list of proposed alternatives to detention, *id.* at 140;
- and ICE's own data on the high efficacy of alternatives to detention, *id.* at 141–156.

At the June 8 hearing, the IJ began by listing all the exhibits, including more than 160 pages of rebuttal evidence submitted by the petitioner, and reviewing the parties' evidentiary objections. Bond Tr. at 2–12. During the hearing, the IJ expressly stated, "I'm sorry, I just have so many cases and I haven't had a chance to review the record on this one," and "again, I'm so short on time. I just haven't had a chance to review this." *Id.* at 5-6.

ICE was first to present argument. Counsel for ICE argued that C.A.R.R. poses a danger to the community because he had been identified as member of MS-13, which has been designated a Tier I terrorist organization, and emphasized that the IJ previously agreed with this assessment in C.A.R.R.'s removal proceedings. *Id.* at 13. Further, the ICE attorney argued that C.A.R.R.'s history of four arrests was evidence of danger, even though three of those cases were dismissed

and his only conviction is for possession of a controlled substance in the fifth degree, for which he was sentenced to five years of probation. *Id.* at 14; *see also* Pet. ¶¶ 19–24 (detailing C.A.R.R.'s criminal history and sole criminal conviction for drug possession); C.A.R.R. Evidence at 46–49. Counsel for ICE also speculated that those dismissals were because of "the 2020 change in New York's discovery law, which put onerous discovery obligations on the prosecution." Bond Tr. at 14. The ICE attorney presented no evidence that compliance with discovery obligations played a role in the dismissals of these cases. The ICE attorney further speculated that, for the charges that were dismissed because the complaining witness declined to cooperate with law enforcement, "when it comes to, you know, victim cooperation, going up again against a gang like MS-13 is quite difficult for some victims." *Id.* at 15. The ICE attorney presented no evidence that this was the reason why the alleged victim in this case declined to cooperate with law enforcement. The ICE attorney also noted that the IJ had found Petitioner not to be credible with respect to his criminal history during the removal proceedings, finding his responses to be evasive and self-serving. *Id.* at 15-16. Lastly, the ICE attorney argued that alternatives to detention would not mitigate the Petitioner's dangerousness given his criminal history and alleged gang association, noting that an ankle monitor or house arrest would "not prevent [him] from fraternizing with other known gang members," "which is a clear danger," as they have access to weapons. *Id.* at 17.

In response, Petitioner's counsel argued that ICE did not meet its burden "to establish that [Petitioner] must remain detained and that no amount of bond or alternative to detention would be sufficient to mitigate any risk." *Id.* at 18. Counsel emphasized that Petitioner "has one single conviction" which "occurred 10 years after he was already in the country," and further argued that the IJ could not consider the other three arrests because they had been dismissed. *Id.* at 18-21 (arguing that, "in theory, [Petitioner] do[es] not have a criminal record before this court"). Counsel further argued that Petitioner denies that he is a member of MS-13 and noted that ICE had not put

forward any evidence of Petitioner's MS-13 membership aside from the I-213 form, the Nassau County Police Department's allegations in a police report, and the IJ's prior conclusion on a different evidentiary standard. *Id.* at 22-23. C.A.R.R.'s counsel also provided evidence of inaccuracies and bias in the Nassau County Police Department's gang database. *Id.* She closed her argument by stating that there was no evidence of C.A.R.R.'s present danger in the record and that alternatives to detention, such as an ankle monitor, could assure his return to court. *Id.* at 23–24.

Following arguments, the IJ denied release, in a short decision, stating:

> [B]ased on documents provided by the government, I find that they've demonstrated by clear and convincing evidence that the respondent is a danger to the community. There's an abundance of evidence here of criminal conduct, association with MS-13 gang members and I find that there are no mitigating circumstances. There are no alternatives that would mitigate the concerns. The government has made a good point about there's really no way to monitor the respondent's association with known gang members. I would note the respondent's last arrest was on December 8, 2023, and his detention was four months later on March 14, 2024, and he's been detained ever since. I understand the respondent has been involved in some programs at the jail but the information that I have here is insufficient to meet his, to mitigate the dangerousness such that alternatives would be available to him. So again, the government has based on the evidence that's provided, has demonstrated by clear and convincing evidence that the respondent is a danger to the community and that there are no alternatives that would mitigate the dangerousness. And then, going beyond that, I don't find sufficient evidence in the documents from the respondent to overcome those findings from the government's evidence. Therefore, I'm denying bond today.

*Id.* at 25. As the IJ went on to tell the Petitioner, "[t]he evidence that you have provided is insufficient to undermine the finding that you are clear— that you are a danger to the community." *Id*. at 26.

Following this decision, C.A.R.R. brought the Motion to Enforce in this Court, arguing that the IJ failed to comply with the Court's orders.

## DISCUSSION

### I. Jurisdiction

Respondents first argue that this Court lacks jurisdiction to review the IJ's bond determination. 8 U.S.C. § 1226(e) provides:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

Thus, while an alien may appeal an unfavorable bond determination to the BIA, § 1226(e) insulates from judicial review any "discretionary judgment" or decision of the Attorney General—including the immigration courts, *see* 8 C.F.R. §§ 1003.10, 1003.19— regarding bond. *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003) (Section 1226(e) bars review of "discretionary judgment" by the Attorney General or a "decision" that the Attorney General made "regarding . . . detention or release of any alien or the . . . denial of bond").

But while a court cannot review a discretionary decision of an IJ regarding a bond determination, many courts have concluded that a district court retains jurisdiction to review *de novo* questions of law and constitutional claims raised in challenges to the *adequacy* of a bond proceeding, including whether a petitioner received the process he was due. *See, e.g.*, *Fernandez Aguirre v. Barr*, No. 19 Civ. 7048, 2019 WL 4511933, at *4 (S.D.N.Y. Sept. 18, 2019) ("Because this Court has held that consideration of alternatives to detention and proof by clear and convincing evidence are required by the Due Process Clause, Petitioner's claims are of a constitutional dimension."). "[W]hether the IJ 'fail[ed] to apply the correct legal standard and to hold the government to its burden of proof' is a question of law that this Court may review." *R.R.M.C. v. Decker*, No. 22 CIV. 2952, 2022 WL 4639674, at *3 (S.D.N.Y. Sept. 30, 2022) (quoting *Argueta Anariba v. Shanahan*, No. 16 Civ. 1928, 2017 WL 3172765, at *4 (S.D.N.Y. July 26, 2017)). As

one court put it, "[t]o the extent [Petitioner] complains that his bond hearing was constitutionally deficient—that is, that the [G]overnment's evidence could not, as a matter of law, establish clearly and convincingly that [he] was dangerous, and therefore he was not accorded the process he is due—he can seek redress from this Court." *Cepeda v. Shanahan*, No. 15 Civ. 9446, 2016 WL 3144394, at *2 (S.D.N.Y. Apr. 22, 2016). Further, "[b]ecause the extent of the Government's detention authority is not a matter of 'discretionary judgment,' . . . respondents' challenge to 'the statutory framework that permits [their] detention without bail' . . . falls outside of the scope § 1226(e)." *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018).

In accordance with the holdings of many district courts that have concluded that a district court retains jurisdiction to hear challenges to the constitutional adequacy of a bond proceeding, the Court will exercise jurisdiction over this motion to the extent it seeks review of any claims regarding legal error by the IJ, and does not challenge the factual determinations firmly within the IJ's discretion under § 1226(e). *See Medley v. Decker*, No. 18 Civ. 7361, 2020 WL 1033344, at *2 (S.D.N.Y. Mar. 3, 2020) (explaining that the Court has an "obligation to afford a degree of deference to the [factfinder's] determinations . . . so as not to overstep its bounds and set aside an immigration judge's bond determination on discretionary or evidentiary grounds.").

## II. Motion to Enforce

### A. Legal Standard

The Court ordered the IJ to hold a bond hearing in which Respondents bore the burden to prove by clear and convincing evidence that Petitioner posed a danger to the community or flight risk that could not be adequately mitigated by alternatives to detention. This standard was not chosen at random; rather, it reflects substantial caselaw regarding the proper balancing of a petitioner's interests in liberty against the risks of release in this context. Generally, the purpose of the clear and convincing evidence standard in this context is to ensure that a petitioner is not

"asked to share equally with society the risk of error." *Addington v. Texas*, 441 U.S. 418, 427 (1979). Where, as here, a petitioner has been held for years on no charge other than removability, many Courts, including the Second Circuit, have explained that due process requires "clear and convincing evidence that the immigrant poses a risk of flight or a danger to the community" to justify continued detention. *Darko v. Sessions*, 342 F. Supp. 3d 429, 435–36 (S.D.N.Y. 2018) (citing *Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015)).

Neither party disputes that the IJ stated the proper standard on the record—i.e., that the Government would bear the burden of proof by clear and convincing evidence for each of the elements relating to release on bond (including dangerousness and risk of flight). However, a petitioner may still bring a "challenge [ ] based on the contention that the decisionmaker erred because the evidence itself could not—as a matter of law—have supported the adjudicator's conclusion." *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 240 (W.D.N.Y. 2019)). That is because, "the mere utterance of the correct standard of proof early in the IJ's decision is insufficient to demonstrate that it was applied when the rest of that decision demonstrates otherwise." *Id.* at 241. A proper application of the clear and convincing standard "requires the government to prove that a factual contention is highly probable." *Apollinaire v. Barr*, No. 19 Civ. 6285, 2019 WL 4023560, at *3 (W.D.N.Y. Aug. 27, 2019) (quoting *Hechavarria*, 358 F. Supp. 3d at 240). Accordingly, several "district courts have found a challenge 'may be based on the contention that the decisionmaker erred because the evidence itself could not—as a matter of law—have supported the adjudicator's conclusion.'" *Hootkhil v. Rio Grande Detention Center, et al.*, No. 5:26 Civ. 768, 2026 WL 2089545, at *6 (S.D. Tex. July 14, 2026).

**B. Application**

Based on a review of the record before the IJ, the Court concludes that no reasonable factfinder could have concluded that the Government met its burden by clear and convincing

evidence to show that (1) C.A.R.R. posed a danger to the community and (2) that alternatives to detention could not mitigate these risks.

**1. Dangerousness**

The clear and convincing standard is "a 'heavy burden' that 'requires the opposing party to present proof that leaves nothing to speculation, conjecture, or surmise.' Should there be any doubt, it must be resolved against the party making the claim." *Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*, 335 F. Supp. 3d 566, 581 (S.D.N.Y. 2018) (quoting *De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.*, 440 F. Supp. 2d 249, 267 (S.D.N.Y. 2006)). This standard is entirely different from the standard typically applied in bond hearings in immigration court. *See* 8 C.F.R. § 1236.1(c)(8) (explaining the standard of proof applicable to typical § 1226(a) bond hearings, requiring an alien to prove "satisfaction of the officer that [her] release would not pose a danger to property or persons."). Both the level of the burden (clear and convincing evidence vs. a preponderance) and on whom it is placed (on the Government, rather than the detainee) differ from what IJs are accustomed to, which may explain why in some cases IJs have been found to have applied a standard akin to their usual practice rather than that ordered by district courts in cases such as these. *See, e.g.*, *Luciano-Jimenez v. Catletti*, No. 26 Civ. 3546, 2026 WL 1831906, at *9 (S.D.N.Y. June 25, 2026) (explaining the persuasive justifications for holding bond hearings before a district judge rather than an IJ where the burden is on the government to demonstrate dangerousness by clear and convincing evidence). Here, the IJ stated the proper standard at the outset of his decision, but he appears to have reverted back to the traditional standard at the conclusion of the hearing, stating: "The evidence that you have provided is insufficient to undermine the finding that you are clear—that you are a danger to the community." Bond Tr. at 26.

That is not the correct standard in this case. It was not the Petitioner's burden to show that he was not a danger to the community, but the Government's heavy burden to make its own showing in that regard by clear and convincing evidence. And when viewing the record, the Court concludes that the evidence relied upon by the IJ could not, as a matter of law, support a finding of dangerousness under that standard. ICE's primary dangerousness argument rested on the allegations that C.A.R.R. is a member of the MS-13 gang and has several criminal arrests. *See* Bond Tr. at 13–15, 24–25. Starting with the evidence of purported MS-13 membership, the ICE attorney emphasized repeatedly that IJ Conroy previously ruled in C.A.R.R.'s removal proceedings that C.A.R.R. was statutorily barred from asylum as a member of a Tier I designated terrorist organization, MS-13. However, as the parties agreed at the hearing before this Court, this prior finding was based only on a preponderance standard, and counsel at the bond hearing made no attempt to show that the prior finding was based on evidence that could also satisfy a clear and convincing standard.

The IJ nevertheless concluded that there was "an abundance of evidence here of criminal conduct, association with MS-13 gang members." Bond Tr. at 25. But ICE counsel produced no witnesses who could testify to C.A.R.R.'s supposed membership and relied almost entirely on uncorroborated allegations in Nassau County police reports. *See* Bond Tr. at 13–15, 24–25; C.A.R.R. Evidence at 50–81. The only evidence in the record as to purported MS-13 membership were a few conclusory statements in Nassau County police reports. But, in addition to his repeated denials of gang membership, C.A.R.R. provided evidence undermining the reliability of the Nassau County evidence through a detailed report on repeated errors in the Nassau County Police Department's reports, including inaccurate labeling of individuals as gang members. C.A.R.R. Evidence at 50-81. And yet the IJ did not discuss this evidence at all and made no effort to explain how the weak support for C.A.R.R.'s alleged MS-13 membership could satisfy a clear and

convincing standard, when weighed against the hundreds of pages of evidence provided by Petitioner disputing his membership in MS-13. Perhaps, on a preponderance standard with the burden on Petitioner, an IJ could have found gang association on this record. But "adjudicating whether to detain or release another person is one of the more serious matters resolved by judges. It requires review and consideration of all relevant evidence submitted." *Palma Aguirre v. Moniz*, No. 26 Civ. 11927, 2026 WL 1784176, at *2 (D. Mass. May 21, 2026) (emphasis in original).

And here, the IJ specifically mentioned that he did not have "a chance to review" the record prior to the hearing, Bond Tr. at 6, meaning that if evidence was not specifically discussed before him during the hearing, he could not possibly have considered it, let alone addressed it. On this record, with the reliability of the basis for gang membership called into serious doubt, a reasonable factfinder considering all of the evidence could not find such "a factual contention is 'highly probable.'" *Hechavarria*, 358 F. Supp. 3d at 240. "In order to arrive at the conclusion that Petitioner was dangerous, therefore, the IJ had to have engaged in conjecture and guesswork about facts not in the record before him," *Fernandez Aguirre*, 2019 WL 4511933, at *6, while also ignoring those properly submitted.

To be clear, the Court does not fault the IJ for failing to consider the record prior to the bond hearing. This Court is aware of the fact that current backlogs in immigration courts make adequate preparation for hearings such as this quite difficult. *Luciano-Jimenez*, 2026 WL 1831906, at *9 (citing the significant slowdown in immigration court processing of bail determinations under 1226(c) as persuasive evidence for holding a bond hearing before the district judge). But Petitioner's constitutional rights cannot be set aside simply because the factfinder is "short on time," and the absence of an indication that the IJ properly considered all of the evidence in the record prior to rendering his decision suggests that the proper standard, which places the burden on the Government to establish the propriety of continuing detention on a clear and

convincing standard, was not applied when the IJ reviewed the evidence of purported gang membership. Mem. Law Opp. at 13, ECF No. 27.

The IJ similarly failed to apply the correct standard to the evidence of Petitioner's criminal history. C.A.R.R. has only one criminal conviction for possession of a controlled substance in the fifth degree. ICE Evidence Packet 1 at 150. Yet, the IJ again found there to be "an abundance of evidence here of criminal conduct" based on the three other arrests, each on uncorroborated, dismissed charges. Bond Tr. at 25. While a factfinder making a bond determination may sometimes consider arrests even where the charges have been dismissed, here, the IJ failed to consider C.A.R.R.'s extensive evidence undermining the factual basis for these dismissed charges, and did not hold Respondents to their burden to prove the reliability of any of the criminal complaints—a significant error. *See Fernandez Aguirre*, 2019 WL 4511933, at *6 (faulting IJ's reliance on dismissed charges where government failed to provide evidence supporting any facts underlying those charges).

While true that one of the four arrests did involve alleged possession of a weapon and menacing conduct, Counsel for Respondents could not, at the hearing before this Court, describe with confidence the facts underlying that dismissed charge, as the parties disputed whether Petitioner possessed some sort of illegal "switchblade" or merely a knife used for his employment as a landscaper, with no evidence provided beyond the dismissed charges themselves. Again, such evidence may have been sufficient to support a finding of dangerousness on a preponderance standard with the burden on the Petitioner, but where the burden is on the government to show dangerousness by clear and convincing evidence, reliance on dismissed charges (without some showing as to the underlying facts) and one low-level narcotics possession conviction is plainly

insufficient.[3] *Palma Aguirre*, 2026 WL 1784176, at *2 n.1 (finding legal error where an IJ found clear and convincing evidence of dangerousness "on the basis of police reports unsupported by witness testimony or other exhibits, even though no charges had led to convictions, while simultaneously giving no consideration at all to fulsome evidence presented by the petitioners seeking bond.").

In sum, the problem here is not that the IJ weighed the evidence incorrectly. It is that the IJ, despite incanting the clear and convincing standard, did not correctly apply it to the record before the court, and—with respect to the evidence of purported gang membership—failed to consider the entire record properly before rendering a decision. Viewing that record under the correct standard, this Court concludes that no factfinder could have reached the IJ's stated conclusion here that C.A.R.R. posed a danger to the community.

**2. Alternatives to Detention**

The Court similarly concludes that the IJ failed to hold the Government to its burden to prove that alternatives to detention could not mitigate the risk of dangerousness posed by

[3] The Court also concludes that the cases newly cited by Respondents at the hearing before this Court do not disturb this conclusion. In all of these cases, IJs relied on extensive evidence of violent criminal conduct to find dangerousness by clear and convincing evidence. *Rivas Reyes v. Mullin*, No. 26 Civ. 4334, 2026 WL 2137762, at *3 (S.D.N.Y. July 24, 2026) (approving of IJ's reliance on assault conviction for finding of dangerousness); *Mathieu v. Dep't of Homeland Sec.*, No. 26 Civ. 4630, 2026 WL 2123350, at *2 (S.D.N.Y. July 22, 2026) (approving of IJ's reliance on Petitioner's admitted physical abuse of his wife in their home); *C.R.C. v. Genalo, et al.*, No. 26 Civ. 2694, 2026 WL 2283016, at *6 (S.D.N.Y. Aug. 7, 2026) (approving of IJ's reliance on conviction for violent conduct and subsequent arrest for assault with a deadly weapon). Further, in none of these cases did IJs rely on unsubstantiated criminal complaints of violent conduct without other indicia of violence; rather, Petitioners in these cases were either convicted of violent conduct or admitted to such conduct. On those facts, a factfinder could properly find it "highly probable" that a Petitioner posed a risk of dangerousness to the community. *Apollinaire*, 2019 WL 4023560, at *3. But here, the only criminal conduct to which C.A.R.R. admits is narcotics possession, and as Petitioner aptly notes, "the IJ did not find C.A.R.R. posed a present danger to the community based on his history of cocaine addiction." Reply Mem. Law in Supp. at 3, ECF No. 30.

C.A.R.R.'s release. Courts in this Circuit routinely find that an IJ has failed to adequately consider alternatives to detention when the record reflects only a conclusory statement that the IJ has considered them, without explaining which ones he considered and why they would be inadequate. *See R.R.M.C.*, 2022 WL 4639674, at *5 (granting motion to enforce where IJ decision "addresse[d] alternatives to detention in conclusory terms" and "d[id] not mention any specific alternatives or explain why any are insufficient"); *Fernandez Aguirre*, 2019 WL 4511933, at *5 (granting motion to enforce where IJ decision "[wa]s utterly [de]void of any discussion of whether non-incarceratory measures, such as home detention, electronic monitoring, and so forth, could mitigate any danger that [p]etitioner posed to the safety of the community"); *G.F.F. v. Francis*, No. 25 Civ. 7368, 2026 WL 924072, at *3, *5 (S.D.N.Y. Apr. 4, 2026) (granting motion to enforce in part where IJ "failed to consider expressly any alternatives to detention," other than "geolocation monitoring, which the IJ dismissed as ineffective in cursory fashion"); *Mendoza v. Noem*, No. 26 Civ. 1260, 2026 WL 1470652, at *6, *9 (S.D.N.Y. May 26, 2026) (granting motion to enforce where IJ "stated without explanation or elaboration that in making his bond determination as to dangerousness, he did not find that any alternatives to detention would be appropriate" (cleaned up)); *Espinoza v. Maldonado*, No. 26 Civ. 1007, 2026 WL 1623056, at *3, *5 (E.D.N.Y. June 5, 2026) (granting motion to enforce where IJ's conclusory statements concerning propriety of alternatives to detention, such as "I don't think they're sufficient," were "the extent of the analysis"); *Thomas v. Searls*, No. 20 Civ. 6362, 2021 WL 358128, at *7, *9 (W.D.N.Y. Jan. 4, 2021) (granting motion to enforce where IJ "provided no hint as to what 'alternative methods' she may have considered," which "ma[de] it impossible to determine whether she complied with the bond order"). It is noteworthy that ICE counsel submitted no evidence whatsoever regarding the efficacy of alternatives to detention. And the only discussion of such alternatives came in the form of their presumed inadequacy, with the IJ noting that "[t]he government has made a good point about

there's really no way to monitor the respondent's association with known gang members." Bond Tr. at 25.

Here, the IJ plainly failed to comply with the Court's order. To begin, even assuming that the IJ correctly concluded that C.A.R.R. poses a danger to the community, there was no record evidence supporting a finding that alternatives to detention, such as home confinement and geolocation monitoring, could not adequately address the risk of dangerousness. In fact, the only evidence on this issue before the IJ was put forward by Petitioner, indicating how ICE itself concluded that geolocation check-ins and home confinement could mitigate the risk posed by Petitioner's release. C.A.R.R. Evidence at 141–156. Thus, the failure to consider or discuss the contrary evidence raised by Petitioner, especially here where there is no evidence introduced by Respondents, demonstrates a failure to apply the proper legal standard.

The IJ's specific reasoning for declining to find the mitigating circumstances to be effective further illustrates his failure to apply the correct legal standard. As the IJ noted, "[t]he government has made a good point about there's really no way to monitor the respondent's association with known gang members." Bond Tr. at 25. But that inappropriately placed the burden on the Petitioner. There was no record evidence to supports the idea that measures such as home confinement could not prevent or severely reduce C.A.R.R.'s association with gang members, meaning that the IJ could only rely on the absence of evidence to the contrary (or baseless speculation) to reach such a conclusion. The IJ's statement that the hypothetical association with gang members within one's home could present a "highly probable" danger to the community, without explanation or any evidence to support such a contention, is also difficult to understand. *See Apollinaire*, 2019 WL 4023560, at *3. Instead of engagement with the evidence, the IJ's conclusion here is exactly the kind of "conjecture" and "speculation" prohibited by the clear and

convincing standard, and it is further evidence that the IJ failed to apply the proper standard in denying bond. *See Hypnotic Hats*, 335 F. Supp. 3d at 581.

**III. Remedy**

Because the Court holds that because Petitioner's bond hearing failed to cure the constitutional violations identified by the Court and failed to comply with its prior Order, Petitioner is entitled to further relief. The Court acknowledges that it should weigh the risk of releasing a petitioner from detention when ordering release as a remedy based upon the Government's failure to comply with a conditional writ. *Mathon v. Searls*, 623 F. Supp. 3d 203, 219 (W.D.N.Y. 2022). In line with other district courts having considered such circumstances, the Court will enforce its grant of the writ by ordering Respondents to release Petitioner from custody on reasonable and appropriate conditions of supervision aimed at mitigating Petitioner's dangerousness." *Mendoza*, 2026 WL 1470652, at *9 ("The Court therefore determines that release on $3,000 bond—the amount that the IJ set in the event that his determination with respect to dangerousness was set aside—is both sufficient and appropriate."); *Palma Aguirre*, 2026 WL 1784176, at *2–3 (ordering immediate release as remedy for failure to comply with identical bond hearing requirements); *Mathon*, 623 F. Supp. 3d at 219 (ordering release and acknowledging that "the existence of some risk associated with release does not bar the Court from ordering it as a remedy.").

Accordingly, the Parties will be directed to "propose a list of conditions of release" which will reasonably mitigate the risk of dangerousness. *G.F.F.*, 2026 WL 924072, at *4 (imposing ten conditions on release, including regular check-ins, geolocation monitoring, and a prohibition on association with known gang members or the commission of any crimes while released). Many of these conditions are similar to those proposed by Petitioner at the hearing, and the Court hopes that the Parties can reach agreement on reasonable terms given the significant constitutional harm inflicted by C.A.R.R.'s prolonged detention.

## CONCLUSION

For the foregoing reasons, C.A.R.R.'s motion to enforce is **GRANTED IN PART**. By August 20, 2026, the parties are directed to file a joint letter containing proposed terms governing C.A.R.R.'s release on bond. Should the parties fail to come to agreement on reasonable terms, the joint letter should contain each party's competing proposed terms with no more than two single-spaced pages of argument in support of each side's proposal.

The Clerk of Court is respectfully directed to terminate ECF Nos. 3, 21, and 23.

SO ORDERED.

Dated: August 18, 2026
New York, New York

DALE E. HO
United States District Judge